USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:___2/2/15___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                   :

ELENI WOLDESELASSIE,             :

                     Plaintiff,    :

                                   :         12 Civ. 07703 (LGS)

          -against-          :

                                   :        OPINION AND ORDER

AMERICAN EAGLE AIRLINES/AMERICAN  :
AIRLINES, et al.,                :

                   Defendants.  :

                                   :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Pro se Plaintiff Eleni Woldeselassie brings this action against American Airlines, Inc.,

American Eagle Airlines, Inc., (together, "AE"), individual AE employees Linda Kunz, Susan

Piper, Brandi Araujo, Lisa Snyder and Todd Steffen (together with AE, the "AE Defendants"),

the Association of Flight Attendants (the "Union"), and individual Union representatives Jon

Orozco, Debbie Lynch, Richard Wrede and Carol Harper (together with the Union, the "Union

Defendants") for employment discrimination on the basis of Plaintiff's alleged disability.  The

Complaint alleges unlawful termination, failure to accommodate Plaintiff's disability, unequal

terms and conditions of employment and retaliation, in violation of the Americans with

Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*, the New York State Human Rights Law,

N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law,

N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL").  Plaintiff also asserts that Defendants

denied her leave in violation of the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*

("FMLA").

The AE Defendants move for summary judgment.  The Union Defendants move to dismiss the claims against them or, in the alternative, for summary judgment.  For the following reasons, both motions are granted.

## I.     BACKGROUND

Unless otherwise noted, the following facts are undisputed, taken from Plaintiff's deposition, or taken in the light most favorable to Plaintiff.

### A.     Plaintiff's Transfer Requests

Plaintiff was employed by AE as a flight attendant from May 2008 to May 2012.  In her four years at AE, Plaintiff transferred home bases a total of seven times, alternating between Chicago, New York and Los Angeles.  A majority of Plaintiff's transfers were for personal, non-health-related reasons.  From May 2008 to around the beginning of July 2008, Plaintiff worked from Chicago.  In around early July 2008, Plaintiff transferred to New York because she wanted to try living without her family and "do her own thing."  Approximately one month later, around late July 2008, Plaintiff transferred back to Chicago because New York "wasn't for [her]."  In January 2009, Plaintiff transferred to Los Angeles, to "see what it would be like . . . to be somewhere else."  In July 2009, Plaintiff transferred back to Chicago again, this time because she wanted to be closer to her family and her physician, Dr. Yeo.  In August 2010, Plaintiff transferred back to Los Angeles.  In February 2011, Plaintiff transferred from Los Angeles to Chicago.  In January or February 2012, Plaintiff transferred back to New York.

In August 2012, Plaintiff requested a final transfer, from New York back to Chicago, citing hardship due to health concerns, and submitting a note from Dr. Yeo to that effect. Plaintiff testified at her deposition that she put in the hardship transfer request because she

"really felt like working out of New York was not working for [her] . . . [and] [i]t was inconvenient" because Dr. Yeo was in Chicago.  Dr. Yeo worked across the street from where her family lived, and both Plaintiff and Dr. Yeo testified that there was no particular reason Plaintiff needed to see Dr. Yeo, a general practitioner whom Plaintiff saw approximately four times over a two-and-a-half year period for Adderall prescriptions.  Dr. Yeo testified that if he had known Plaintiff lived in New York, he would have advised her to see a doctor there.

AE personnel temporarily denied Plaintiff's transfer request, but kept her on the transfer list, and suggested that in the meantime, as an alternative way to get time off, she apply for FMLA leave or "trip-trade" with another flight attendant.

### B.      Plaintiff's Attendance Record

Throughout her career at AE, Plaintiff was frequently tardy or absent and received multiple warnings for unexcused absences and tardiness.  Plaintiff routinely failed to appear for meetings with her supervisors to discuss her attendance record.

On February 5, 2009, Plaintiff's supervisor at the time, Jessica Wilber, met with Plaintiff to discuss her attendance record after Plaintiff missed an assignment, reported late and called in sick twice during her first few months at AE.  At the meeting, Wilber gave Plaintiff an advisory "Attendance Letter Review" that recorded issues with her attendance.  On June 20, 2010, Plaintiff received a second Attendance Letter Review, after she missed four assignments, was late four times, called in sick five times, and failed to call or report to work for three days in a row.  On January 12, 2011, Wilber scheduled another meeting with Plaintiff to discuss her attendance.  Plaintiff failed to appear for the meeting.  At her deposition, Plaintiff testified that she did not attend the meeting with Wilber because she "didn't want to.  And that's that."

On July 7, 2011, Plaintiff's supervisor attempted to meet with her about her attendance record. The following, day, after Plaintiff failed to respond to her supervisor's attempt to contact her, a different AE manager approached Plaintiff at the airport about her attendance record and gave her a third Attendance Letter Review. The Attendance Letter Review recorded that for the period from July 2010 to July 2011, Plaintiff called in sick eight times, missed nine assignments, was late twice and took six personal days. The manager also warned Plaintiff that she was abusing flight attendant privileges by taking complimentary flights on days she called in sick or missed assignments.

On September 12, 2011, another manager met Plaintiff directly at her flight to give her a "First Step Advisory," which recorded that for the period of September 12, 2010, to September 12, 2011, Plaintiff was absent 24 times, missed 21 assignments and reported late twice. Plaintiff testified that it was "unfair that [she] was forced to have a meeting with [the manager] after work" and that the meeting caused her to lose her laptop. Plaintiff testified that "nothing was done" about her lost laptop.

On April 26, 2012, Plaintiff received a Second Step Advisory, covering the period from April 25, 2011, to April 25, 2012, which recorded that Plaintiff had missed forty-five work assignments, totaling ninety-three days, and had arrived late on seventeen occasions. At her deposition, Plaintiff testified that she has no basis to dispute the accuracy of her attendance records.

In the period leading up to and after the Second Step Advisory, Plaintiff's supervisors unsuccessfully attempted to meet with her on multiple occasions. On March 1, 2012, a supervisor emailed Plaintiff to schedule a meeting; Plaintiff did not respond to the email or

4

attend the meeting.  On March 7, 2012, the supervisor emailed again to schedule a meeting and

Plaintiff again failed to respond or attend the meeting.  On March 22, 2012, two of Plaintiff's

supervisors asked to meet with her; Plaintiff responded that she could not meet with them

because she was having an allergic reaction.  On April 1, 2012, after numerous failed attempts to

meet with Plaintiff, a supervisor met Plaintiff directly at the aircraft to discuss Plaintiff's

attendance, and issued a final warning, stating that Plaintiff would receive her Second Step

Advisory if she did not improve her attendance, and would suffer disciplinary action.  A few

days later, however, Plaintiff missed another assignment.  On April 10, 2012, a supervisor

emailed Plaintiff to inquire about the missed assignment; Plaintiff responded four days later,

stating that she was in Chicago seeing her doctor but decided not to call in sick because she

"didn't need/want to be off of work for 2 days."

On April 17, 2012, a supervisor emailed Plaintiff that she should come to the office for a

meeting regarding attendance.  Plaintiff did not respond to the email or attend the meeting.  On

April 25, 2012, Plaintiff was again directed via email to meet with her supervisors; she again

failed to meet with them, responding only two days later to say that a family member had passed

away.  On May 11, 2012, a supervisor scheduled another meeting which Plaintiff failed to attend.

On May 12, 2012, the supervisor attempted to schedule yet another meeting, writing that "failure

to respond to this directive is considered insubordination and grounds for termination."  Yet

again, Plaintiff failed to respond to the meeting request or attend the meeting.  Plaintiff's

supervisors attempted to meet with her a final time on May 23, 2012, and again warned her that

failure to appear would result in disciplinary action, including termination; Plaintiff again failed

to appear and did not contact her supervisors to alert them that she would not be attending the

meeting.  Plaintiff testified that she had called in sick to the crew scheduling department, and that

her supervisor should have known she had called in sick and would not make the meeting.

Plaintiff agreed at her deposition that her supervisor had tried to contact her many times before

the May 23, 2012 meeting.

     On May 24, 2012, Plaintiff was discharged for insubordination in violation of AE's

policies.

###     C.    Additional Leave under the FMLA

     During her employment at AE, Plaintiff also took authorized leave under the FMLA,

beginning in January 2010.  According to the FMLA form Plaintiff initially submitted to AE in

or around January 2010, she required FMLA leave for various ailments, including rheumatism,

migraine headaches and gastritis.  Plaintiff's doctor testified that the conditions he listed on the

FMLA leave form were based solely on what Plaintiff told him about her past diagnoses, and

were not based on tests he performed.  At her deposition, Plaintiff testified that she has suffered

for a few years from a few different disabilities, with her main concern being her chest, which

sometimes feels like it is being pressed upon and causes shortness of breath.  According to

Plaintiff, her other disabilities include a cyst on her wrist which makes it "hard for [her] to pick

up stuff and do whatever," cramps, and bad headaches "like migraines."

     The initial FMLA form Plaintiff submitted did not state how often Plaintiff required

FMLA leave.  At AE's request, Dr. Yeo clarified that Plaintiff should be given leave "once a

week possibly" for one to two days a week.  Dr. Yeo testified that he did not understand the

FMLA certification form, and after speaking with a doctor working with AE, he revised the

suggested period of leave from one to two days a week to one to two weeks a year, which was

consistent with Plaintiff's symptoms.  On March 31, 2010, AE authorized Plaintiff to take one to two weeks a year for the period from January 8, 2010 to January 7, 2011.

On June 8, 2010, Dr. Yeo submitted a revised FMLA form at Plaintiff's request, which asserted that Plaintiff should be eligible for leave twice a month for two day periods.  Dr. Yeo testified that he made the change based on what "she told [him]."  After speaking with a doctor employed by AE, Dr. Yeo changed the form to state that Plaintiff required leave once a month for up to two days, which, according to his testimony, was more consistent with Plaintiff's needs than his previous assessment of two leaves per month.  AE granted Plaintiff FMLA leave once a month for up to two days for the period between May 22, 2010, and January 7, 2011.

On October 4, 2011, Plaintiff requested additional FMLA leave for a period starting retroactively in January 2011, and continuing through January 2012.  Plaintiff again submitted a form signed by Dr. Yeo, which stated that she required leave four to five times a month. Although Dr. Yeo signed the form, he testified that this amount of leave was "probably not" necessary because it was not common for someone with Plaintiff's conditions to have episodes that frequently.  AE denied Plaintiff's FMLA request on grounds that she did not have enough hours to be eligible for FMLA leave.

Plaintiff disputes that she did not have enough hours for FMLA leave.  In support of her claim that she was eligible for FMLA leave, she submits an incomplete set of pay stubs, on the basis of which she calculates that she worked 555.31 hours for the relevant time frame.  At her deposition, Plaintiff testified that she did not know how hours are calculated under the FMLA. AE, in contrast, asserts that Plaintiff actually worked or was paid either 271.22 hours, or 332.06

hours, depending on the time period.[1]  In support of its calculations, AE submits a declaration by

its FMLA Coordinator, explaining how AE calculates FMLA leave, and Plaintiff's "Activity

Report" for the relevant period, which records the number of FMLA-eligible hours Plaintiff

actually worked or was paid for.

In April 2012, Plaintiff submitted another request for FMLA leave.  Both Plaintiff and

Doctor Yeo testified that, while the FMLA form was signed by Dr. Yeo, it was filled out by

Plaintiff, who wrote that she had a "heart condition," although Dr. Yeo had not checked

Plaintiff's heart and Plaintiff had no medical documentation of a heart condition.  AE denied

Plaintiff's request for the period of January 2012 through March 2012, because Plaintiff had not

made a timely request for retroactive leave, and granted Plaintiff's request for the period from

April 1, 2012, through January 14, 2013.

Plaintiff testified that no one kept her from exercising the FMLA leave she was granted

and that each time she returned to work after taking leave, she returned to equal terms and

conditions of employment.

**D.     Union Grievance**

After her discharge, Plaintiff contacted her union representatives to contest the discharge.

On June 1, 2012, the Union filed a grievance challenging Plaintiff's discharge.  On August 29,

2012, a hearing took place, where Plaintiff was represented by Jon Orozco, the Vice President of

the Union's Local Executive Counsel.  On September 5, 2012, AE denied the grievance, finding

that Plaintiff's employment was terminated for just cause.

---

[1] Although Plaintiff submitted her FMLA request on October 4, 2011, AE personnel calculated
her hours not from October 4, 2010, to October 3, 2011, but instead from September 17, 2010, to
September 16, 2011, "in an effort to be generous and give [Plaintiff] the earliest possible leave
designation."

Between September 2012 and March 2013, union representatives worked with Plaintiff to review her case. On April 4, 2013, the Union Grievance Screening Committee, tasked with evaluating cases for the final level of the grievance process (arbitration before the AFA American Eagle System Board of Adjustment) unanimously determined that Plaintiff's case was not an appropriate candidate for arbitration due to its poor likelihood of success. By letter of the same date, the Union advised Plaintiff that she retained the option of proceeding to arbitration at her own expense. Plaintiff did not pursue this option.

### E.      Plaintiff's Deposition Testimony

During Plaintiff's deposition, she was asked a series of questions about her allegations of discrimination. When asked what the basis of her unlawful discrimination claim was, she stated: "[T]he company disregarded my disability to go into work on whatever days. They didn't want to give me my FMLA and terminated me while I was out on FMLA, and then found it to be okay to insult me on top of it via email." Plaintiff also testified that she was discriminated against because her final request to transfer to Chicago was denied and because she felt she was "personally being targeted" for her attendance. Plaintiff was also asked to describe the ways in which she felt she was harassed on the basis of her disability. She responded that her manager was "really awkward" and spoke to her "like [she] was a bug in the wall and she was very vicious." Plaintiff also testified that there were emails about how her pants were tight, that she was "tricked into having a meeting," and that she was "disrespected" and her time was "disregarded." When asked at her deposition whether any individual harassed her because of her disability, she expressly denied that as being the cause of respect by one Defendant; as to another

Defendant, she responded "I don't know what her problem was.  I'm not sure.  It could have been.  I don't know."

## II.     STANDARD

Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor.  *See In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

If the non-moving party has the burden of proof on a specific issue, the moving party may satisfy its own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim.  *See Celotex*, 477 U.S. at 322-23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).  In other words, summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

If the moving party carries its initial burden, then the non-moving party bears the burden of demonstrating a genuine issue of material fact.  *See id.*  In satisfying this burden, the non-moving party cannot rely merely on allegations or denials of the factual assertions of the moving

party.  *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 324.  Moreover, "conclusory

statements, conjecture, or speculation by the party resisting the motion will not defeat summary

judgment."  *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).  The non-moving party

must present specific evidence in support of its contention that there is a genuine dispute as to

the material facts.  *See Celotex*, 477 U.S. at 324.  Furthermore, to demonstrate a genuine dispute

as to the material facts, the non-moving party must come forward with sufficient evidence to

permit a reasonable jury to return a verdict in his favor.  *See Anderson*, 477 U.S. at 242, 248.

**III.    DISCUSSION**

**A.    Discriminatory Discharge and Unequal Terms and Conditions of
Employment by AE**

Plaintiff alleges that AE discriminated against her by subjecting her to unequal terms and

conditions of employment and firing her due to her disability in violation of the ADA, the

NYSHRL and the NYCHRL.  AE moves for summary judgment on each of these claims.

Because Plaintiff has failed to raise a triable issue of fact with respect to any of her claims,

summary judgment is granted in AE's favor.

**1.    ADA and NYSHRL**

The ADA and NYSHRL prohibit discrimination against a disabled individual on the basis

of a disability in the hiring, discharge, and terms, conditions and privileges of employment.  42

U.S.C. § 12112(a); N.Y. Exec. Law § 296(1)(a).  At the summary judgment stage, the Court

applies the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 802-03 (1973), to evaluate Plaintiff's claims.  *See Heyman v. Queens Village Comm. for

Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999).

Under the *McDonnell Douglas* framework, "[the] plaintiff bears the initial burden of proving by

11

a preponderance of the evidence a prima facie case of discrimination.  The burden of production

then shifts to defendants, who must offer through the introduction of admissible evidence a non-

discriminatory reason for their actions that, if believed by the trier of fact, would support a

finding that unlawful discrimination was not a cause of the disputed employment action.  [The]

[p]laintiff then must show that the proffered reason was merely a pretext for discrimination,

which 'may be demonstrated either by the presentation of additional evidence showing that the

employer's proffered explanation is unworthy of credence, or by reliance on the evidence

comprising the prima facie case, without more.'"  *Id.* (internal citations and quotation marks

omitted).  To establish a prima facie case of discrimination, the plaintiff must show that: (1) her

employer is subject to the applicable statute, (2) she is disabled within the meaning of the statute,

(3) she is otherwise qualified to perform the essential functions of her job, and (4) she suffered

an adverse employment action because of her disability.  *See Jacques v. DiMarzio, Inc.*, 386 F.3d

192, 198 (2d Cir. 2004).

　　　Assuming for purposes of this motion that Plaintiff suffers from a disability as defined by

the relevant statutes and is otherwise qualified to perform the essential functions of her job,[2]

Plaintiff provides no evidence that she was discharged on the basis of her disability.  While her

memorandum of law in opposition to the motions is rife with generalized assertions of

discrimination, Plaintiff identifies not a single remark or incident evidencing discriminatory

animus.  Similarly, Plaintiff adduces no evidence of disparate treatment of non-disabled

---

[2] The AE Defendants do not contest these elements of Plaintiff's prima facie case for purposes of
their motion, but reserve the right to later challenge that Plaintiff has a disability.  The Union
Defendants address both elements, asserting that Plaintiff does not have a cognizable disability
as the term is defined in the relevant discrimination statutes and that she was unable to perform
the essential functions of her job as a flight attendant.  Because Plaintiff's claims fail on grounds
independent of these two elements, they are not addressed in this Opinion.

individuals in similar situations.  In fact, Plaintiff testified that she was not aware of any similarly-situated individuals who missed meetings with management and were not fired.

Even if Plaintiff had satisfied her prima facie burden in respect of her discharge, AE has provided substantial evidence of a non-discriminatory reason for firing Plaintiff, namely, her persistent absenteeism, which included dozens of missed assignments, her general unresponsiveness to communications from her supervisors and her repeated refusal to appear for meetings with supervisors.  *See Young v. Ltd. Brands*, No. 11 Civ. 2927, 2013 WL 5434149, at *7 (S.D.N.Y. Sept. 25, 2013) (finding that defendants "easily met their burden of production to provide a 'legitimate, nondiscriminatory reason,'" where the plaintiff refused to participate in a mandatory meeting and had extensive record of insubordination and poor performance).  Even if Plaintiff's absences were the result of her disability, "[t]he ADA does not require employers to tolerate persistent absenteeism even when attendance problems are caused by an employee's disability."  *Mescall v. Marra*, 49 F. Supp. 2d 365, 374 n.18 (S.D.N.Y. 1999) (alteration in original).  Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims of unequal terms and conditions of employment and discriminatory discharge under the ADA and NYSHRL.

### 2.   NYCHRL

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  To survive a summary judgment motion under the NYCHRL, Plaintiff must adduce evidence that she "has been treated less well at least in part '*because of* '" her alleged disability.  *Id.* at 110 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (2009)) (emphasis in

original).  For substantially the same reasons as those described above, Plaintiff has not satisfied

her burden, and summary judgment is accordingly granted on her NYCHRL claim as well.

### B.      Retaliation by AE

Plaintiff asserts that AE retaliated against her in violation of the ADA, the NYSHRL and

the NYCHRL by (1) failing to assist her in locating her stolen laptop; (2) failing to compensate

her for hours worked; and (3) refusing to give her FMLA leave.  AE moves for summary

judgment on Plaintiff's claims.  Because Plaintiff has not adduced evidence that she engaged in

any protected conduct, summary judgment is granted in favor of AE on Plaintiff's retaliation

claims.

### 1.      ADA and NYSHRL

Section 12203(a) of the ADA provides that "[n]o person shall discriminate against any

individual because such individual has opposed any act or practice made unlawful by this chapter

or because such individual made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  The NYSHRL

contains a similar provision.  *See* N.Y. EXEC. LAW § 296(1)(e), (3-a)(c).  To prevail on her

retaliation claims under the ADA and NYSHRL at the summary judgment stage, Plaintiff must

first make a prima facie showing that:  (1) she engaged in a protected activity; (2) AE was aware

of this activity; (3) AE took adverse employment action against her; and (4) a causal connection

exists between the alleged adverse action and the protected activity.  *Treglia v. Town of Manlius*,

313 F.3d 713, 719 (2d Cir. 2002).

The claims for retaliation under the ADA and the NYSHRL fail because Plaintiff

presents no evidence establishing that she engaged in a protected activity.  She asserts that she

14

engaged in two separate acts that constitute protected activities -- reporting harassment by management and approaching a union member.  But Plaintiff does not allege that she reported harassment or approached a union member *in connection* with her disability.  Indeed, she expressly denied that she was harassed on account of a disability.  *See supra* § I.E.  In other words, Plaintiff has made no showing that she opposed an act made unlawful by the ADA or the NYSHRL.  Insofar as Plaintiff may have made other, general complaints, it is well established that a complaint of generalized harassment unrelated to disability does not constitute protected conduct under the discrimination statutes.[3]  *See, e.g.*, *Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275, 287 (S.D.N.Y. 2006) ("[plaintiff] has claimed that she was retaliated against for complaining about observations of her work, and other allegedly adverse actions.  However, because she does not allege that she ever complained to her supervisors that she was the victim of discrimination, these complaints are not protected activity as a matter of law.").  Accordingly, summary judgment is granted on Plaintiff's retaliation claims under the ADA and NYSHRL.

### 2.   NYCHRL

Like the ADA and NYSHRL, the NYCHRL prohibits retaliation by an employer on account of the plaintiff's engagement in protected conduct.  N.Y.C. Admin. Code § 8-107(7).  To survive a summary judgment motion under the NYCHRL, Plaintiff must show that she took an

---

[3] To the extent the Complaint can be construed to assert a hostile work environment claim on account of the alleged harassment, and assuming that the ADA provides a basis for a hostile work environment claim -- an open question in the Second Circuit, *Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 n.1 (2d Cir. 2014) -- such a claim would fail for substantially the same reason.  *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir.1999) ("A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class.").

action opposing her employer's discrimination and "as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (internal citation omitted). "Retaliation claims under the NYCHRL cover a broader range of conduct than their state and federal counterparts." *Krasner v. City of New York*, 580 F. App'x 1, 3 (2d Cir. 2014); *accord Mihalik*, 715 F.3d at 113. Even under the more liberal standard provided by the NYCHRL, however, Plaintiff has not established that she took some action opposing her employer's alleged discrimination. Accordingly, summary judgment is granted in Defendant's favor on Plaintiff's retaliation claims.

### C.    Failure to Accommodate by AE

Plaintiff contends that AE failed to accommodate her disability in violation of the ADA, the NYSHRL and the NYCHRL by refusing her final request to transfer from New York to Chicago and by failing to excuse her absence from the meeting scheduled with her supervisor on May 23, 2012. AE moves for summary judgment on Plaintiff's failure to accommodate claims. Because Plaintiff has failed to raise a triable issue of fact with regard to her failure to accommodate claims, summary judgment is granted in AE's favor.

#### 1.    ADA and NYSHRL

The ADA prohibits "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). The NYSHRL contains a similar provision. N.Y.C. Admin. Code § 8–107(15)(a). To prevail on a failure to accommodate claim at the summary judgment stage, a plaintiff must make a prima facie showing that: (1) the plaintiff is a person with a disability within the meaning of the ADA; (2) an employer covered by the statute had notice of the

disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations. *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006) (citation omitted).

Plaintiff's argument that the failure to transfer her to Chicago constitutes a violation of the ADA fails because Plaintiff has adduced no evidence establishing that a transfer to Chicago was medically necessary in order for her to perform the essential functions of her job. *See Callistro v. Cabo*, No. 11 Civ. 2897, 2013 WL 322497, at *10 (S.D.N.Y. Jan. 25, 2013) ("[T]o support her failure-to-accommodate claim, [the plaintiff] must do more than simply declare that her osteoarthritis interferes with her mobility or accessibility to the Nursery or that her diabetes requires frequent trips to the restroom. [The plaintiff] must provide expert medical evidence to that effect and she has provided no such evidence."). At her deposition, Plaintiff made several statements indicating that a transfer to Chicago was a matter of preference rather than necessity, and Dr. Yeo testified that there was no reason Plaintiff needed to see him specifically, and suggested that Plaintiff should have seen a doctor in New York if she lived there. In any event, AE did not refuse the accommodation Plaintiff requested -- time off to see her doctor -- as her transfer request was only temporarily denied pending an opening in Chicago, and Plaintiff was expressly counseled about alternative means for taking time off, including by obtaining additional FMLA leave or trip-trading with other flight attendants.

Plaintiff's assertion that the failure to excuse her absence from the May 23 meeting constitutes a failure to accommodate likewise fails for several reasons. First, an accommodation must be requested, and it is undisputed that Plaintiff did not request that her supervisor accommodate her disability by moving the May 23 meeting or even notify her supervisor directly

17

that she would not be attending the meeting.  Second, the purpose of a reasonable

accommodation is to enable an individual to perform the essential functions of her job -- such as

attending meetings with supervisors, not to excuse her from performing those essential functions.

Finally, to the extent Plaintiff can be understood to argue that the failure to excuse her absence

from the May 23 meeting caused her termination, such an argument overlooks Plaintiff's dismal

attendance record, her multiple failures to attend meetings and her complete disregard for her

supervisors, all of which cumulatively contributed to her discharge.  Accordingly, summary

judgment is granted in Defendant's favor on Plaintiff's failure to accommodate claims.

### D.      Disability Discrimination by the Union

Plaintiff asserts that the Union discriminated and retaliated against her in violation of the

ADA because, inter alia, it was "fully aware" of AE's actions, "cater[ed] to airlines [sic] needs"

and "cover[ed] up for the Airline."  The Union moves to dismiss, or in the alternative, moves for

summary judgment on Plaintiff's claims of discrimination on account of her disability in

violation of the ADA.[4]  Because Plaintiff has failed to raise a triable issue of fact in regard to her

claims, and because Plaintiff failed to exhaust her administrative remedies for claims against the

Union, summary judgment is granted in the Union's favor on all claims.

Plaintiff's claims against the Union fail first and foremost because Plaintiff adduces no

evidence supporting her claim of discrimination or retaliation by the Union.  A plaintiff claiming

---

[4] It is not clear from the Complaint whether Plaintiff also intended to assert claims against the
Union Defendants under New York state and city law.  Those claims would, in any case, be
preempted by the Union's federal duty of fair representation, as "the weight of well-reasoned
authority in this Circuit finds that claims against a union and its representative under the NYHRL
and the NYCHRL are subsumed by the duty of fair representation when the gist of the claim is
the failure to represent the plaintiff in a fair and non-discriminatory manner."  *Morillo v. Grand
Hyatt New York*, No. 13 Civ. 7123, 2014 WL 3498663, at *4 (S.D.N.Y. July 10, 2014) (citing
cases).

that a union discriminated or retaliated against her based on her disability is required to show that (1) the union breached its duty of fair representation, and (2) that the union's actions were motivated by a discriminatory or retaliatory animus. *Mahinda v. Org. of Staff Analysts*, No. 11 Civ. 2652, 2012 WL 1999691, at \*3 (S.D.N.Y. June 1, 2012) (citation omitted). "[B]reach [of the duty of fair representation] occurs only when a union's conduct toward a member . . . is arbitrary, discriminatory, or in bad faith," *United Steelworkers of Am., AFL–CIO–CLC v. Rawson*, 495 U.S. 362, 372 (1990) (citation and internal quotation marks omitted), or "when it causes an employer to discriminate against employees on arbitrary, hostile, or bad faith grounds." *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 277 (2d Cir. 2004) (citation omitted). "[T]he duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1153–54 (2d Cir. 1994) (citation omitted).

Plaintiff has not proffered evidence that the Union behaved in an arbitrary or discriminatory manner or in bad faith. Plaintiff asserts that the Union did not "protect" her and that the Union was aware that AE terminated Plaintiff while she was out sick, appearing to argue that the Union was somehow complicit in the decision to discharge Plaintiff. Plaintiff does not adduce evidence to support her allegations, and her assertions are contradicted by evidence submitted by Defendants, establishing that the Union grieved her termination, represented Plaintiff at the grievance hearing and met with Plaintiff multiple times to address the merits of her case. Further, the Union's decision not to arbitrate Plaintiff's discharge is not in and of itself suggestive of arbitrary or bad faith conduct. "'A union member does not have an absolute right

to have a grievance arbitrated.'"  *Jones v. SEIU Local 1199*, No. 08 Civ. 6179, 2009 WL

5171882, at *8 (W.D.N.Y. Dec. 22, 2009) (citing *Vaughn v. Am. Tel. & Tel. Co.*, 92 F. App'x 21,

23 (2d Cir. 2004)).  "Absent a showing that the union's conduct was arbitrary, discriminatory, or

in bad faith, the court should not second-guess the union's decision not to pursue arbitration."

*Vaughn*, 92 F. App'x at 23 (citing *Smith v. Drug, Chemical, Cosmetic, Plastics and Affiliated

Indus. Warehouse Emps. Local 815*, 943 F. Supp. 224, 242 (E.D.N.Y. 1996); *accord Pinkney v.

Progressive Home Health Servs.*, No. 06 Civ. 5023, 2008 WL 2811816, at *6 (S.D.N.Y. July 21,

2008).  In light of Plaintiff's poor attendance record and general unresponsiveness to

management, no reasonable trier of fact could find that the Union's decision not to proceed to

arbitration was arbitrary, discriminatory or in bad faith.

Second, Plaintiff's claim against the Union also fails on the independent ground that she

failed to exhaust her administrative remedies in respect of that claim.  A plaintiff asserting claims

under the ADA in federal district court must first file a charge with the Equal Employment

Opportunity Commission ("EEOC") or a related state agency such as the New York State

Division of Human Rights.  Failure to do so constitutes a failure to exhaust administrative

remedies and deprives the federal court of jurisdiction over the claim.  *See Curto v. Edmundson*,

392 F.3d 502, 503 (2d Cir. 2004).  Here, Plaintiff filed an EEOC charge only against AE, and did

not name as a respondent or even mention the Union.  Accordingly, summary judgment is

granted in the Union's favor on Plaintiff's claims.

### E.      FMLA Claims[5]

#### 1.      Interference with FMLA

Plaintiff asserts that AE unlawfully interfered with her right to FMLA leave when it denied her October 2011 request for leave.  To succeed on her claim for FMLA interference, Plaintiff must demonstrate that AE denied or otherwise interfered with a benefit to which she was entitled under the FMLA.  *See* 29 U.S.C. § 2615(a)(1).  For a flight attendant to be eligible for FMLA leave, she must have (1) been employed for at least twelve months by the employer from whom she is requesting leave and (2) either worked or been paid for 504 hours of service with that employer in the twelve months prior to the beginning of her leave.  29 U.S.C. § 2611(2)(D); 29 C.F.R. § 825.801(b)(2).  The 504 hours do not include commute time, vacation or sick leave.  29 C.F.R. § 825.801(b)(2).

The parties' sole dispute in respect of Plaintiff's FMLA interference claim is whether she accrued 504 FMLA-eligible hours during the relevant period.  Plaintiff has failed to show that she worked or was paid for 504 FMLA-eligible hours during the relevant time period.  The incomplete set of pay stubs she provides does not show the number of hours Plaintiff worked, but rather shows all of the hours for which she was paid, and the FMLA-implementing regulations clearly state that vacation time and sick time are not counted for FMLA purposes.  In contrast, Defendants have submitted evidence conclusively establishing that Plaintiff did not work the requisite number of hours to be eligible for FMLA leave.  Because Plaintiff was not entitled to FMLA leave for the period in question, her claim for FMLA interference fails.

---

[5] Insofar as Plaintiff intends to assert claims against the Union Defendants for violations of the FMLA, those claims fail because only an "employer" may be liable for FMLA interference or retaliation.  29 U.S.C. § 2611.

### 2.   FMLA Retaliation

Plaintiff alleges that AE retaliated against her for taking FMLA leave by terminating her, "writ[ing] [her] up" and refusing her FMLA leave in 2011.  Plaintiff's claim lacks merit, and accordingly, summary judgment is also granted on this claim.

Claims for retaliation under the FMLA are also analyzed under the *McDonnell Douglas* burden-shifting framework.  *Potenza v. City of New York*, 365 F.3d 165, 167–68 (2d Cir. 2004) (per curiam).  Plaintiff must first make a prima facie showing that "1) [s]he exercised rights protected under the FMLA; 2) [s]he was qualified for h[er] position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent."  *Id.* at 168.

Plaintiff is unable to satisfy the fourth prong of her prima facie case.  She has adduced no evidence giving rise to an inference that she was "written up," fired or denied FMLA leave because she exercised her rights under the FMLA.  As an initial matter, the record establishes that Plaintiff was first counseled about her performance-related issues in February 2009, nearly a year before she made her first FMLA request in or around January 2010.  *Cf Young v. Ltd. Brands*, No. 11 Civ. 2927, 2013 WL 5434149, at *6 (S.D.N.Y. Sept. 25, 2013) (finding that the "factual record . . . leads inexorably to an inference of performance-based dismissal, not disability-based discrimination" where "Defendants were concerned about Plaintiff's performance long before Defendants knew of any medical condition.").  Further, Plaintiff was repeatedly granted, and encouraged to take, FMLA leave, and was granted FMLA leave in 2012, after the denial of her October 4, 2011, application for FMLA leave, negating any inference that the 2011 denial was retaliatory.  In addition, Plaintiff expressly testified that no one kept her

22

from exercising the FMLA leave she was granted and that each time she returned to work after taking leave, she returned to equal terms and conditions of employment.  Even if Plaintiff were able to make a prima facie showing of FMLA retaliation, Plaintiff's extensive disciplinary history, as detailed above, amply establishes legitimate cause for "writing Plaintiff up" and for her discharge.

### F.    Liability of the Individual Defendants

Plaintiff's claims against the individual AE Defendants and the individual Union Defendants fail for several reasons.  First, there is no individual liability under the ADA.  *See Sherman v. Cnty. of Suffolk*, No. 11 Civ. 2528, 2014 WL 7370033, at *7 (E.D.N.Y. Dec. 29, 2014) (citing cases).  Second, while the NYSHRL and NYCHRL do establish supervisory liability for discriminatory conduct, Plaintiff has failed to show any discriminatory conduct in the first place.  *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004) (construing NYSHRL); *Encarnacion v. Isabella Geriatric Ctr., Inc.*, No. 11 Civ. 3757, 2014 WL 7008946, at *12 (S.D.N.Y. Dec. 12, 2014) (construing NYCHRL).  Finally, "it is well established that union officers and employees are not individually liable to third parties for acts performed as representatives of the union."  *Ifill v. New York State Court Officers Ass'n*, 655 F. Supp. 2d 382, 394 (S.D.N.Y. 2009) (citation and internal quotation marks omitted).

## IV.    CONCLUSION

For the above reasons, summary judgment is granted in Defendants' favor on all claims. The Clerk of Court is directed to mail a copy of this order to the pro se Plaintiff, close the motions at Docket Nos. 84 and 95 and close the case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore IFP status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).


SO ORDERED.

Dated: February 2, 2015
     New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**